UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re                                                           Chapter 13
Charlene Spraggins,                                             Case No. 07-24728-svk
        Debtor.

---

### Memorandum Decision on Trustee's Objection to Confirmation

---

      Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), there was little question that a Chapter 13 debtor's tax refunds constituted disposable income that were required to be dedicated to the Chapter 13 plan. However, BAPCPA changed the definition of "disposable income," and courts around the country are divided on the proper interpretation of the term "projected disposable income." In light of the controversial changes, should debtors still be required to dedicate their tax refunds to their Chapter 13 plans? And assuming tax refunds must be paid into the plan, can a below-median income debtor obtain confirmation of a plan dedicating 50% of her tax refunds (the traditional requirement in this District) for three years as opposed to five years? This case attempts to answer these taxing questions.

      Charlene Spraggins (the "Debtor") has proposed a plan providing that she will make payments of $470.17 per month for up to 60 months, and that 50% of the tax refunds that she receives for the first 36 months of the plan also will be paid into the plan. Since her income is below the state median for her household size, the Debtor proposes that the plan will be completed as soon after 36 months as payments to the Debtor's attorney, a secured vehicle loan and 1% of claims filed by unsecured creditors have been paid. The Trustee has objected to confirmation of the plan, contending that either 100% of the tax refunds must be dedicated for 36 months, or the Debtor must stay in the plan for 60 months, and may then dedicate 50% of her tax refunds as an additional dividend to unsecured creditors.

      In order to resolve this issue, the Court must first determine how the projected disposable income of a below-median debtor should be calculated. Then, the Court must consider whether a tax refund constitutes disposable income and finally evaluate the Debtor's proposal to commit her tax refunds for three years rather than five years.

### Disposable Income for Below-median Debtors Analyzed under Form B22C

      The Chapter 13 plan confirmation requirements are found in 11 U.S.C. § 1325. To properly apply § 1325, one must begin with an examination of the language of the statute. *See Lamie v. U.S. Trustee,* 540 U.S. 526, 534 (2004). "Where the statutory language is plain, the 'sole function of the courts, at least where the disposition required by the text is not absurd, is to enforce it according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1 (2000) (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989)).

Under § 1325(b)(1), upon the objection of the trustee or an unsecured creditor, the Court may not confirm a plan unless it "provides that all of the debtor's projected disposable income to be received in the applicable commitment period …will be applied to make payments to unsecured creditors under the plan." Disposable income according to § 1325(b)(2) "means ***current monthly income*** received by the debtor…less amounts reasonably necessary to be expended…[for the support of the debtor and the debtor's dependents, charitable contributions, and necessary business expenses]." 11 U.S.C. § 1325(b)(2) (emphasis supplied). The definition of "current monthly income" under § 101(10A) is "the average monthly income from all sources that the debtor receives…without regard to whether such income is taxable income, derived during the 6 month period…" preceding the bankruptcy filing. 11 U.S.C. § 101(10A). Current monthly income is computed on Form B22C, filed with the court in every chapter 13 case. See Fed. R. Bankr. P. [Interim] 1007(b)(6) which provides: "A debtor in a chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form, and, if the debtor has current monthly income greater than the median family income for the applicable state and family size, a calculation of disposable income in accordance with § 1325(b)(3), prepared as prescribed by the Official Form." Another calculation of income is found on Schedule I, also a required bankruptcy form,[1] on which the debtor lists monthly income at the time the case is filed. In essence, Form B22C captures the average of the debtor's past income for the six months prior to the petition, while Schedule I contains the actual income for the month the debtor files Chapter 13.

In light of the apparent inconsistency and sometimes strange results of using past income as a guide to determine the debtor's future payments on a Chapter 13 plan, bankruptcy courts are divided on the calculation of projected disposable income under § 1325(b)(2).[2] Three approaches have emerged, each of which is "supported by persuasive arguments and authority." *In re Ross,* 375 B.R. 437, 442 (Bankr. N.D. Ill. 2007); *see also In re Wilson*, 2008 Bankr. LEXIS 769 (Bankr. M.D.N.C. Mar. 3, 2008) (providing a thorough analysis of the three approaches). Some courts use a "forward-looking" analysis, evaluating the debtor's actual and anticipated future income using Schedule I. *See In re Fuller,* 346 B.R. 472 (Bankr. S.D. Ill. 2006); *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006). The second view treats the income listed on Form B22C as a presumption of "projected disposable income" unless the debtor can demonstrate that there has been a change in circumstances. *Kibbe v. Sumski (In re Kibbe),* 361 B.R. 302, 314-15 (B.A.P. 1st Cir. 2007) (stating that Form B22C is a starting point for the court to determine the debtor's projected disposable income, but this figure can be rebutted by evidence, including the figures reflected on Schedules I and J); *In re Slusher,* 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Jass,* 340 B.R. 411, 418 (Bankr. D. Utah 2006). The third view, a plain meaning approach followed by a significant number of courts,[3] focuses on the statute's definition of "current monthly income" adopted in § 1325(b)(2) and accordingly utilizes Form

---

[1] See § 521(a)(1)(B)(ii); see also Fed. R. Bankr. P. [Interim] 1007(b)(1)(b).

[2] Judge Klein summarized the issue in *Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257, 268 (B.A.P. 9th Cir. 2007): "The chapter 13 'disposable income' objection-to-confirmation problem is a classic paradox. The emphasis in §§ 101(10A) and 1325(b) on historical income as the threshold for confirming a chapter 13 plan over an objection contradicts the basic premise embodied in §§ 1306(a) and 1322(a)(1) that chapter 13 plans are funded by future income that really exists . . . ."

[3] The *Wilson* court estimated that over twenty different courts have followed the third view. 2008 Bankr. LEXIS 769, at *14.

2

B22C to define the income component of projected disposable income. *Coop v. Frederickson (In re Frederickson),* 375 B.R. 829, 835 (B.A.P. 8th Cir. 2007); *In re Alexander,* 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006). *See also In re Ross,* 375 B.R. 473, 442 (Bankr. N.D. Ill. 2007); *In re Nance,* 371 B.R. 358 (Bankr. S.D. Ill. 2007).

This Court adopted the third "plain meaning" approach in *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006). Under *Guzman*, a case involving above-median debtors, the disposable income was determined by subtracting the expenses and allowable deductions on Form B22C from the Form B22C income. This analysis is consistent with a plain reading of § 1325(b)(1)(B) which clearly and unambiguously defines "disposable income" as "current monthly income," which in turn is defined as the average income for the past six months, and calculated on Form B22C. *Guzman's* use of the number computed on Form B22C without massaging the result upward or downward based on the debtor's circumstances arguably implements Congressional intent to employ a bright-line test for disposable income by removing bankruptcy court "value judgments" concerning the debtor's lifestyle. The District Court in the Western District of Wisconsin recently espoused the approach for these reasons. *See Mancl v. Chatterton (In re Mancl),* 381 B.R. 537 (W.D. Wis. 2008); *see also In re Turner,* 2008 Bankr. LEXIS 837 (Bankr. S.D. Ind. Mar. 27, 2008) (analyzing legislative history and noting that Congress deliberately and emphatically chose--after years of debate--a formulaic test over a more flexible, judicially governed standard to determine a debtor's ability to pay); *In re Green*, 378 B.R. 30 (Bankr. N.D.N.Y. 2007); *In re Barr,* 341 B.R. 181 (Bankr. M.D.N.C. 2006). Furthermore, although once classified as the "minority view," recent case law suggests that the *Guzman* approach is in fact gaining momentum, having been adopted by a number of bankruptcy courts, district courts and bankruptcy appellate panels. *See In re Bardo,* 379 B.R. 524, 527 (Bankr. M.D. Pa. 2007) ("while a considerable number of cases have embraced the *Hardacre* interpretation a similar number have rejected it").

*Guzman, Mancl* and most of the other cases addressing this topic involve above-median debtors, and commonly construe § 1325(b)(3) concerning determining the debtor's reasonable expenses. In analyzing a below-median debtor's projected disposable income, many courts revert back to the pre-BAPCPA method of comparing Schedules I and J. *See generally Kibbe, supra*. However, the calculation of the debtor's gross income should not be affected by whether the debtor is above or below the state median, because the subsection that differentiates between the above-median and below-median debtors deals with "amounts reasonably necessary to be expended," i.e., the expense component of the disposable income equation. *See* 11 U.S.C. § 1325(b)(3). In other words, under the plain language of the statute, the expenses of above-median debtors are governed by § 707(b)(2), but the income calculation does not depend on whether a debtor is above or below the median. Since § 1325(b)(1)(B) and (b)(2) define "disposable income" as current monthly income, Form B22C rather than Schedule I should be used to determine the income side of the below-median debtor's projected disposable income.

Courts have endorsed Form B22C rather than Schedule I to determine the income of below-median debtors. For example, Judge Leonard in *In re Alexander* stated that "[t]o arrive at a disposable income figure for a below-median income debtor, one takes the debtor's current monthly income from Part I of Form B22C and subtracts the total monthly expenses from Schedule J." 344 B.R. 742, 746 (Bankr. E.D.N.C. 2006). Similarly, the court in *In re Giordes*

acknowledged that pre-BAPCPA courts looked at Schedules I and J to determine the amount a debtor should commit to a plan but found that "analysis is no longer valid under BAPCPA." 350 B.R. 31, 36 (Bankr. M.D.N.C. 2006). Following the lead of *Alexander,* the *Giordes* court found that to arrive at "a projected disposable income figure for a below-median debtor, the debtor's monthly expenses from Schedule J must be subtracted from CMI as calculated pursuant to Part I of Form B22C." *Id.* at 37. Similarly, the courts in *In re Schanuth,* 342 B.R. 601, 604 (Bankr. W.D. Mo. 2006) and *In re Braswell,* 2006 Bankr. LEXIS 2902 (Bankr. E.D.N.C. Aug. 23, 2006) used Part I of Form B22C as the income component of the projected disposable income for below-median debtors.[4] Suggesting that the only difference in the treatment of above-median and below-median debtors is the expense side of the equation, the court in *In re Meek* stated that the "[c]alculation of current monthly income is the same for all debtors, while calculation of reasonably necessary expenses varies under § 1325(b)(2) and (b)(3) depending on a debtor's status as below-median income or above-median income." 370 B.R. 294, 299 (Bankr. D. Idaho 2007).[5] A literal reading of § 1325(b) dictates that the income portion of Form B22C should be used to determine the income of all Chapter 13 debtors, with the expense portion of the Form applicable only to above-median debtors pursuant to § 1325(b)(3). This methodology is consistent with the view of courts in the *Guzman* camp and most faithfully follows the language of the statute.

After re-analyzing my prior ruling in *Guzman*, noting the adoption of this approach by District Judge Crabb in *Mancl*, and the endorsement of the same analysis in cases such as *Schanuth, Alexander, Braswell* and *Giordes,* this Court holds that the income shown on Form B22C, rather than Schedule I, should be used to calculate the projected disposable income of a below-median debtor. The implications of this holding require an analysis of whether the pre-BAPCPA doctrine that "tax refunds are disposable income" remains true to the new law. Moreover, simply subtracting the Schedule J expenses from the income found on Form B22C does not end the inquiry, because Schedule J does not contain a deduction for the debtor's payroll taxes.

## **Treatment of Tax Refunds**

"Current monthly income" means the average monthly income from all sources that the debtor receives regardless whether the income is taxable. 11 U.S.C. § 101(10A). Current monthly income is gross income, from which expenses, including taxes, are subtracted to arrive at disposable income. *See Meek,* 370 B.R. at 298 (disposable income is the difference between two components: "current monthly income" and "amounts reasonably necessary to be expended" for the maintenance and support of the debtor).

---

[4] The *Braswell* court further acknowledged that § 1325(b)(2) does not limit "reasonably necessary expenses to those listed on Schedule J." 2006 Bankr. LEXIS 2902, at *2. Rather, it held that "other expenses should be taken into consideration when calculating disposable income for below-median debtors" such as the payroll deductions of taxes, social security, insurance and union dues set forth at line 4 of Schedule I. *Id.*

[5] See also *In re Rotunda,* 349 B.R. 324, 330-33 (Bankr. N.D.N.Y. 2006) ("Congress opted to use an average of a debtor's income over the six months prepetition in calculating CMI, apparently with the intent to provide a more realistic picture of the debtor's financial status ….This is a policy that the Court may perhaps question but it cannot alter.").

4

Tax refunds are not income, rather tax refunds are the product of overpayment of payroll taxes. *See, e.g., In re Bardo*, 379 B.R. 524 (Bankr. M.D. Pa. 2007); *In re Balcerowski,* 353 B.R. 581, 586 (Bankr. E.D. Wis. 2006). The *Bardo* court, faced with an unsecured creditor's objection that the debtor was not including tax refunds in the plan, recognized that the proper analysis is whether the debtor was deducting a reasonable amount for withholding taxes on the expense side of the equation, not whether the tax refunds themselves were additional disposable income required to be dedicated to the plan. This Court faced a similar issue for above-median debtors in *In re Stimac*, 366 B.R. 889 (Bankr. E.D. Wis. 2007).

In *Stimac*, the Chapter 13 trustee objected to the debtors' deductions for taxes on Line 30 of Form B22C. Line 30 allows above-median debtors to deduct "the total average monthly expense that you actually incur for all federal, state and local taxes, other than real estate taxes and sales taxes, such as income taxes, self employment taxes, social security taxes and Medicare taxes." This Court noted that simply inserting the amounts withheld from the debtor's paycheck for these taxes is incorrect, because many debtors over-withhold. However, requiring the debtor to estimate the amount of taxes that are actually incurred is fraught with difficulty, because tax laws and debtors' circumstances change. This Court followed the lead of other courts who provided an option for debtors to use the actual amounts withheld on Line 30, and then to dedicate the tax refunds (traditionally limited by local custom in this District to 50% of the refunds for the entire length of the plan) if the debtor did not wish to or could not afford to deduct the actually incurred taxes to arrive at disposable income. *See, e.g., In re Raybon*, 364 B.R. 587 (Bankr. D.S.C. 2007). For example, if the payroll taxes a debtor actually incurs total only $200 per month, but the debtor is withholding $400 per month, subtracting the lower amount will serve to increase the debtor's disposable income. That $200 per month increase may require a debtor to make a minimum monthly plan payment that is higher than the debtor reasonably can afford. In *Stimac*, the debtor was allowed to subtract the actual amounts withheld from the amount of current monthly income, but was then required to dedicate 50% of the tax refunds to the payment of unsecured creditors for the term of the plan, thereby "correcting" the error of over-estimating the tax liability when making the deduction. *See In re LaPlana*, 363 B.R. 259, 267 (Bankr. M.D. Fla. 2007). The dedication of 50% of the refunds is a shortcut that saves analysis, dispute and litigation over whether the amount of the tax deduction is reasonable.

Since a tax refund is not income, but a correction of the over-estimation of an expense, the Debtor here could propose to keep her tax refunds and include a deduction from current monthly income for payroll taxes actually incurred. Since a deduction for payroll taxes is not currently found on Schedule J, the Debtor could add the deduction to Schedule J or in some other analysis provided to the trustee.[6] The Debtor will have the burden of proving that the amount deducted for taxes is "actual, necessary and reasonable." *In re Stimac,* 366 B.R. 889 (citing *Baxter v. Johnson (In re Johnson),* 346 B.R. 256, 268 (Bankr. S.D. Ga. 2006)). If the Trustee and unsecured creditors do not object to the plan based on the deduction of the debtor's actual taxes incurred, then the debtor is not required to turn any portion of her tax refunds over to the Trustee. If the Trustee or an unsecured creditor objects, the Court will determine the reasonableness of the tax deduction (and the other claimed deductions). *See Meek, supra,* 370

---

[6] The deduction for payroll taxes, including social security withholding, is found on Line 4 of Schedule I. Similarly, health insurance and deductions for union dues are found on Schedule I. Under the Court's ruling, below-median debtors can continue to deduct the reasonable and necessary expenses for these items that they actually incur.

5

B.R at 297 n.9 citing *In re Loper*, 367 B.R. 660 (Bankr. D. Colo. 2007) (once a § 1325(b)(1) objection is raised, court must scrutinize debtor's income and expenses to determine if projected disposable income is committed, and stating "although an objector may only object to a particular itemized expense, the court is free in its analysis to consider all income and expenses."). The decision will be made based on the projected disposable income, i.e., the income stated in part I of the Debtor's Form B22C less the reasonably necessary expenses found on Schedule J and those reasonably necessary expenses not included on Schedule J, including taxes, health insurance and union dues, as appropriate. *See Braswell,* 2006 Bankr. LEXIS 2902, at *2.

      Given the complexity and uncertainty inherent in determining actual taxes incurred, the Court adopted a rule of thumb in *Stimac* that "the amount to be deducted on Line 30 will be presumed to be the amount of taxes the debtor actually paid, as evidenced by the most recent tax return filed, divided by twelve." 366 B.R. at 895. The same rationale should apply to below-median debtors, and the Debtor in this case could use her most recent tax return to determine the federal and state taxes she actually paid and calculate the amount that would be placed on Line 30 if she were above-median, which is presumed to be the actual taxes incurred.[7] This format enables "the debtor and the trustee to start with a benchmark number that is readily ascertainable." *Id.* Either the Debtor or the Trustee would be entitled to show that the most recent taxes paid are too low or too high to constitute the Debtor's reasonable and necessary expenses for taxes. In this case, the record does not include any information about the Debtor's actual taxes, and the Court is unaware of whether she would prefer to deduct the taxes actually incurred or to use the amount of her withholding, and dedicate 50% of the refunds to the Trustee.

      Assuming that the Debtor prefers to dedicate tax refunds to the plan, the final issue is whether she must dedicate those refunds for three years or five years in order to comply with § 1325(b)(1)(B). As noted above, dedication of the tax refunds is a "shortcut" that enables the Debtor to continue the same level of tax withholding without risk of jeopardizing her ability to fund the plan by using the presumably lower actual tax deduction and without the expense of the analysis and potential dispute over whether the actual tax deduction is correct. In that sense there is a benefit to the Debtor that may be earned by dedicating the refunds for the longer period. And, in theory at least, committing refunds for five years rather than three years should provide a higher dividend to unsecured creditors. On the other hand, the applicable commitment period for below-median debtors is three years, not five years. 11 U.S.C. § 1322(d). Requiring a below-median debtor to extend her plan to the fourth and fifth year after confirmation simply to pay in tax refunds that may have no relationship to the debtor's statutorily defined "projected disposable income" does a disservice to the changes in § 1325(b)(1) made by BAPCPA, as interpreted by this Court. Moreover, in the Court's experience, many debtors with excellent plan payment records neglect to pay the tax refunds to the Trustee, leading to Motions to Dismiss and increased time and administrative burdens for the debtor, the Trustee and the Court. This District's traditional requirement that the debtor must dedicate 50% of the tax refunds to the plan recognizes the reality that tax laws and debtors' circumstances change and that Chapter 13

---

[7] Unlike some of the expenses on Form B22C that are limited by National or Local Internal Revenue Standards, the debtor's income and self-employment taxes on Line 30 are defined as those actually incurred. In order to arrive at projected disposable income, it is logical that the below-median debtor should also deduct taxes actually incurred, no more and no less.

6

debtors need some cushion to help with unforeseen expenses and increased costs of living.  The concept remains compelling today, possibly more than ever for people whose income is below the state median.  Accordingly, the Court holds that the below-median Debtor's plan can be confirmed if it dedicates one-half of the tax refunds received by the Debtor for the three years after confirmation.

## **Conclusion**

It is long-standing pre-BAPCPA doctrine that a Chapter 13 debtor's tax refunds are disposable income that must be dedicated to the Chapter 13 plan.  In this District, traditionally only 50% of those refunds have been required to be paid to the Trustee.  However, when analyzed under the new definitions of BAPCPA, it is apparent that taxes actually incurred are an expense deduction that can and should be subtracted from gross income (computed according to Part I of Form B22C), along with other reasonable and necessary expenses.  If a below-median debtor subtracts the taxes actually incurred (not necessarily those withheld), and proposes a plan that dedicates the net projected disposable income to the unsecured creditors, that plan can be confirmed without the necessity of the debtor dedicating the tax refunds to the plan.  If the debtor's finances do not permit the deduction of the amounts actually incurred for taxes, or the debtor simply prefers not to undertake the analysis (or potential dispute with the Trustee), the debtor can deduct all taxes withheld, and dedicate one-half of the tax refunds for the first three years of the plan.  Since the below-median Debtor here has dedicated 50% of her tax refunds for three years of the Plan, the Plan may be confirmed, and the Trustee's Objection is overruled.

Dated: April 11, 2008

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge